CITY OF GRENADA *v.* EDWARD WOOD ET AL.,
EXECUTORS, ETC.

1. MUNICIPALITIES. *Grenada.  Treasurer's salary.  Power to fix.*

  The municipal authorities of the city of Grenada, under its special
  charter, have authority by ordinance to fix and change the com-
  pensation of the municipal treasurer.

2. SAME. *Ordinance.  Several parts interdependent.*

  If a municipal ordinance seeking to have certain moneys disbursed
  by a committee, instead of the treasurer, be void, the treasurer
  cannot recover the compensation sought to be given by said ordi-
  nance, where its parts are interdependent.

3. OFFICERS' SALARIES. *Suits for.  Evidence of value.*

  Testimony as to the reasonable value of a municipal treasurer's
  services is incompetent in a suit by him to recover compensation
  therefor, if his salary be fixed by ordinance.

FROM the circuit court of Grenada county.

HON. WILLIAM F. STEVENS, Judge.

Wood and another, appellees, executors of the last will and
testament of C. T. Wood, deceased, ex-treasurer of the city of
Grenada, were plaintiffs in the court below, the city was de-
fendant there.  The facts were these: The city of Grenada
never came under the code 1892 chapter on "municipalities,"
but was governed by its separate charter, an act of the legisla-
ture, approved March 28, 1872.  [The act seems to be omitted
from the volume "Laws of Mississippi, 1872," probably for
want of the governor's authority to publish the same as re-
quired by laws 1872, p. 115, proviso to sec. 6.]

In 1897, C. T. Wood was treasurer of the city of Grenada,
and, while he was treasurer, the mayor and board of aldermen
issued its bonds for the purpose of raising money to erect an
electric light and waterworks plant, and to put in a sewage

system, in the sum of $55,000, and sold the bonds and got the money.  The treasurer's commission on money disbursed by him was up to June 11, 1897, 3 per cent.  On June 11, 1897, the mayor and board of aldermen passed the following ordinance:

" Whereas the treasurer of the city of Grenada, Miss., will handle large sums of money within the next three or four months; and whereas the handling of said money was not contemplated when the treasurer aforesaid was elected to the office; therefore it is considered, and so ordered by the board, that the commissions of the said treasurer aforesaid be, and they are hereby, fixed at one-fourth of one per cent for disbursing the funds of the city of Grenada, Miss."

On July 1, 1897, an ordinance was passed by said board restoring the treasurer's commissions to 3 per cent on the general fund, making the money derived from the sale of the aforesaid bonds a special fund, and providing for the appointment of a committee to receive and disburse this fund, and further providing that the treasurer was to receive no commission on this fund so disbursed.  The committee appointed in pursuance of this ordinance disbursed this fund, and Wood brought this suit to recover commissions on this money.  In one count he declares for the 3 per cent commissions, alleging that the ordinance passed by the board July 1, 1897, directing the receipt and disbursement of said money by the committee, was *ultra vires* and void, and that he alone was the person through whom the money should have been disbursed.  By his second count he asks for reasonable compensation.  The plaintiff having died pending the suit the action was revived in the name of his executors.  The court below held that plaintiffs could not recover compensation of 3 per cent commission, but that the act of the board in having the money disbursed through the committee was *ultra vires* and void, and that plaintiffs, as executors, were entitled to recover a reasonable compensation for the testator's official services, and allowed evidence to be intro-

duced by plaintiffs to show what reasonable compensation was. From a verdict and judgment for plaintiffs, based on this view, the city appealed to the supreme court and plaintiffs prosecuted a cross-appeal.

*Horton & Horton* and *S. A. Morrison,* for appellant.

Granting that that part of the ordinance is void which appoints a committee of three to receive and disburse the bond funds, it does not follow that the first part of said ordinance is also void. *Ut res magis valeat quam pereat;* the courts will divide and separate the good from the bad and the goats will be placed on the left, while the sheep will be put on the right hand side. They will split and divide a hair twixt the south and southwest side rather than defeat the true and lawful intent of laws passed by the powers that be. "Where a charter authorized the penalty of fine and imprisonment, an ordinance imposing, in addition thereto, 'costs of prosecution,' was declared void as to such addition, but valid as to the remainder." *State* v. *Cantieny,* 34 Minn., 1. "As one section of a statute may be repugnant to the constitution without rendering the whole act void, so one provision of a section may be invalid by reason of its not conforming to the constitution while all other provisions may be subject to no constitutional infirmity. One part may stand while another may fail, unless the two are so connected or dependent on each other in subject-matter, meaning or purpose that the good cannot remain without the bad." 10 L. R. A., 201 (left hand col.). To the same effect, see 15 *Id.*, 377; 20 *Id.*, 80; 1 Dil. Mun., sec. 421; *Campbell* v. *Bank,* 6 How. (Miss.), 677; *Cotton* v. *McKenzie,* 57 Miss., 418; *Bank* v. *Stegall,* 41 Miss., 143; *Sanford* v. *Starling,* 69 Miss., 204; *Adams* v. *Bank,* 75 Miss., 701; *McBride* v. *Adams,* 70 Miss., 716; *Thompson* v. *Railroad Co.,* 3 How., 251; 9 Wall., 277; 31 So. Rep., 35.

It is very plain from a reading of said ordinance that it was intended by the board that Wood was to receive only one-fourth

of 1 per cent on the bond fund and 3 per cent on the ordinary city funds. Repeals by implication are not favored. The former law, unless changed by express enactment, or clear implication, remains in force. *Pores* v. *State*, 49 Miss., 1; *Beard* v. *Board of Supervisors*, 51 Miss., 542; *Smith* v. *Vicksburg*, 54 Miss., 615; *Johnson* v. *State*, 59 Miss., 544; *Board of Education* v. *Aberdeen*, 56 Miss., 518.

*W. C. McLean*, for appellee.

The charter of the city is the source and the limit of the power of the board of mayor and aldermen, and it bears the same relation to the board that the constitution of the state bears to the legislature. The board of mayor and aldermen have no more right to pass an ordinance violative of the charter, than the legislature has the right to enact a law in violation of the constitution; the board of mayor and aldermen have no more right to abolish an office or to oust a city official than the legislature of the state has the right to abolish an office prescribed by the constitution. This can no more be done indirectly than it can be done directly; it can no more be done *pro tanto* than it can be done *in toto*. The purpose and effect of the ordinance of the board in having the money received and disbursed by the committee was tantamount to, in fact it was virtually ousting the city treasurer from the discharge of his duties. It was the duty of the city treasurer to receive and disburse all of the funds belonging to the city, not only general but special, and these funds under sec. 13 of the charter was a general fund. The ordinance of the board in diverting this money from its regular and legal channel, and in having it disbursed by the committee, was *ultra vires* and void. There can be no question about that. An officer who has been duly elected and duly qualified, and who is *de jure* officer, is entitled to all the emoluments of the office, and any act of any person preventing him, the officer, from receiving the emoluments of his office, is absolutely void. The board of mayor and alder-

men had no power to pass the ordinance in question; it had no power or authority to prevent the treasurer from receiving and disbursing this money; there was no way known to the law by which the board could prevent the treasurer from receiving a just and reasonable compensation for this money.

The plaintiff in the court below contended, and he contends in this court, first, that under the facts he is entitled to a commission of 3 per cent upon the whole amount of $55,000. The facts are that at the time of, and prior to June 11, 1897, the compensation allowed the treasurer was 3 per cent; on June 11, 1897, the board passed an ordinance fixing the treasurer's compensation at one-fourth of 1 per cent; at the time it was evident that the board intended that the treasurer should handle the money derived from the sale of the bonds, and that in the opinion of the board one-fourth of 1 per cent would be a just and reasonable compensation.

But it is equally clear that on reflection the board concluded and fully recognized the fact that a commission of one-fourth of 1 per cent was too small and wholly inadequate, and consequently on July 1, 1897, the board passed an ordinance restoring the treasurer's commission on the general fund to 3 per cent, but provided that this should not include the special fund of $40,000 derived from the sale of bonds. The whole scheme and purpose of the board was not to allow any compensation to the treasurer for the money derived from the sale of the bonds, and in the opinion of the board the only way by which this could be done was to have it disbursed through the committee; the board recognizing the proposition that 3 per cent commissions was a just and reasonable sum for the disbursement of money.

Our position is simply this: The ordinance of July 1st in so far as it fixes the compensation of the treasurer at 3 per cent is a complete repeal of the ordinance of June 11th, and is a valid exercise of power (the board had the right to fix the compensation, provided it was a reasonable one) and the effect of

repealing the ordinance of June 11th was to restore the compensation at what it was prior to that date, to-wit, 3 per cent; and so much of the ordinance of July 1st as undertook to have the money disbursed through the committee was absolutely null and void.   It therefore follows that that portion of the ordinance which is. *ultra vires* should be rejected, and that part which is valid should be enforced.   The rule seems to be well settled that where a portion of a statute or an ordinance of a municipality is valid, and part if invalid, we enforce the one and reject the other.   If our contention be sound, it then follows that the instruction refused for the plaintiff, ought to have been given, which directed the jury in substance to assess the damages at 3 per cent upon the amount of money derived from the sale of the bonds and disbursed through the committee.   The lower court held that the board of mayor and aldermen had no right to have this money disbursed through a committee, and that the board could not, by such action, prevent the treasurer from receiving his commissions thereon, and further held that it was a question of fact for the jury to say what was a reasonable compensation under the circumstances.

The proposition is not a new one in this court, but on the other hand has been settled, that while the mayor and board of aldermen had the right to fix the compensation, yet at the same time it is not binding upon the other parties, and is subject to a review.   A case on all fours with the case at bar is *DeSoto County* v. *Westbrook,* 64 Miss., 312.

CALHOON, J., delivered the opinion of the court.

We think the board had the right to pass the ordinance of June 11, 1897, and, in doing so, did no wrong to the treasurer of which he can legally complain.   If the ordinance of July 1, 1897, was void in directing the receipt and disbursement of the money derived from the sale of the bonds by others than the treasurer, it was also void in fixing his pay at 3 per cent on funds other than those so derived.   The two things were parts

of the same scheme, and interdependent. This left the ordinance of June 11th in force, and the treasurer is entitled to the pay it prescribes. We do not think the case of *Board* v. *Westbrook*, 64 Miss., 312 (1 South., 352), applies here.

It follows that the court did not err in refusing the instruction asked by cross-appellant to allow 3 per cent, and that it did err in allowing inquiry into what was reasonable compensation, and so the case is

*Reversed on direct appeal, affirmed on cross-appeal, and remanded.*